**IN THE SUPERIOR COURT OF THE STATE OF WASHINGION**

**IN AND FOR THE COUNTY OF PIERCE**

FILED ___ LODGED
___ RECEIVED

APR 14 2016

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY                                    DEPUTY

| | |
|---|---|
| Calvin Malone; George Mitchell; Ronald Fox; Richard Schoonover; Mark Robinson; John E. Brooks; Chris Cantley; Jonathan Parsons; Joseph Townsend; Paul Geier; Scott Jones; George Hancock; Zachery Nelson; Bruce Rafford; Michael Cole; Jeremy Mathis; Gregory Jaeger; Duane Brennan; Matthew Hopkins; Dennis Dumas; Curtis Pouncy; Richard Jackson; Laura McCullum; Mikeel Azeem; Thomas Toomey; Tommy Coleman, James Turner and Similarly Situated Persons.<br><br>Plaintiff;<br><br>**Vs**<br><br>Mark Strong<br><br>Defendant. | Civil Action No.<br><br>COMPLAINT CLASS ACTION |

**Jurisdiction**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1342 (a) (3), as Plaintiffs allege, pursuant to 42 U.S.C. §1983, that Defendant, under color of state law, have deprived the Plaintiffs of their rights, privileges and immunities secured by the Eighth and Fourteenth Amendments to the United States Constitution.

Pursuant to 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over the Plaintiffs' state law claims in which they allege that the Defendants deprived them of their rights under Article I, sections 3, and 5 of the Washington Constitution and under Chapters RCW 71.09, Such claims are so related to the §1983 claims that they form part of the same case and controversy.

Accordingly, jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and §1343(1), (3), and (4). Additionally the Plaintiffs seek to invoke the Supplemental and Pendent Jurisdiction of this Court for all violations of Washington State statutory law, and official policies, as the violations arise from the same nucleus of conduct which have violated the Federally protected rights of the Plaintiffs, and the laws of the United States 28 U.S.C. §1367.

## Venue

Venue is proper in the Superior Court of the State of Washington in and for the County of Pierce because the Special Commitment Center is located on McNeil Island, in Pierce County in Washington State and the Plaintiffs and Defendants reside within the geographical jurisdiction of the above-entitled Court. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (a) as all substantial parts of the events and omissions giving rise to the claims herein occurred in this district.

## Parties

**Plaintiffs** Calvin Malone; George Mitchell; Ronald Fox; Richard Schoonover; Mark Robinson; John E. Brooks; Chris Cantley; Jonathan Parsons; Joseph Townsend; Paul Geier; Scott Jones; George Handcock; Zachery Nelson; Bruce Rafford; Michael Cole; Jeremy Mathis; Gregory Jaeger; Duane Brennan; Matthew Hopkins; Dennis Dumas; Curtis Pouncy; Richard Jackson; Laura McCullum; Mikeel Azeem; Thomas Toomey; Tommy Coleman and Similarly Situated Persons are or were residents housed on McNeil Island at the Special Commitment Center.

## Defendant

Defendant Mark Strong is Washington Special Commitment Center CEO and administrator of SCC who has the responsibility to manage the staff of SCC and oversee the daily operation of

1   the facility and the care and well being of all SCC residents, including the Plaintiffs. Defendant

2   Strong is acutely aware that the Plaintiffs are being unwillingly forced to consume unsafe

3   drinking water with chemicals such as Trihalomethanes. Defendant Strong failed to do anything

4   about it, thereby demonstrating a wanton and callous disregard with deliberate indifference

5   toward the Plaintiffs health, safety, and well-being. Defendant Strong has supervisory authority

6   and responsibility for the administration and operation of SCC, for promulgating, approving and

7   implementing all SCC policies, practices and procedures and for training all SCC personnel and

8   for the custody and overall treatment of the Plaintiffs. Defendant Strong directly participated in

9   and exercised reasonably close supervision of the personnel who are responsible for the

10  deprivation of the Plaintiff's Constitutional rights. Suing in his personal & official capacity.

11

12                                          **Introduction**

13  Special Commitment Center resident James Edward Jones filed a 42 U.S.C.§ 1983 Civil Rights

14  complaint in the United States District Court, Western District of Washington, on January 3,

15  2014, (Case No. 3:14-cv-05018-BHS), against SCC CEO Mark Strong and others. The District

16  Court granted Summary Judgment for the Defendants. Plaintiff Jones appealed to the 9th Circuit.

17  On February 24, 2016 the 9th Circuit affirmed in part, reversed in part, and remanded. Circuit

18  Judges Leavy, Rernandez, and Rawlinson held that, "Jones raised a genuine dispute of material

19  fact as to whether Strong violated his Fourteenth Amendment rights by subjecting him to

20  punishment. *See Jones v. Blanas*, 393 F.3d 918, 931-32 (9th Cir. 2004) (analyzing pre-trial civil

21  detainees' conditions of confinement under the Fourteenth Amendment and explaining that such

22  individuals cannot be subject to conditions amounting to punishment). The record contains

23  evidence showing that the water in Jones' housing unit was often brown, had floating debris, and

24  at least once, caused Jones and another detainee gastrointestinal distress and vomiting. *See*

25

1   *Keenan v. Hall*, 83 F.3d 1083,1091 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998)

2   (reversing summary judgment on prisoner's Eighth Amendment claim alleging that water in his

3   housing unit was Blue/Green in Color and Foul Tasting [,]" even though defendants produced

4   evidence that "recent water quality tests showed that the water was pristine" (internal quotation

5   marks omitted)). Jones also submitted evidence showing that staff occasionally told detainees not

6   to use the water and passed out water bottles, and Strong did not address Jones' concern that he

7   was unable to shower, wash, or shave."

8   Like Jones, all SCC residents have had to drink the water and have been exposed to

9   contaminated water as well as dangerously high levels of purification chemicals and thus are

10   being subject to punishment. The Plaintiffs named in this complaint move the court to certify as

11   a class all current and former SCC residents in this mater based on the merits of the recent ruling

12   from the 9th Circuit.

13

14                                     **Class Action**

15   Water is one of the basic human necessities for life protected by the 8th Amendment. The 14th

16   Amendment requires pre-trial detainees not to be denied access to safe drinking water. The use

17   of chemicals such as Trihalomethanes which can "...result in liver, kidney, or central nervous

18   system problems, and an increased risk of cancer," does not give meaningful protection to this

19   basic human necessity, (See Attachment A)

20   According to Federal Rule of Civil Procedure 23 (b) (2) this class action may be maintained

21   since the prerequisites under subsection (a) of the rule has been satisfied, (i.e., numerosity,

22   commonality, typicality, and representative ness) and "the party opposing the class has acted or

23   refused to act on grounds that generally apply to the class, so that final injunctive relief or

24

25

corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23 (b)(2)

This class action may be maintained if subsection (a) is also satisfied, Federal Rule of Civil Procedure 23(b)(3) where, "the court finds that the questions of law or fact common to class members predominate ever any questions affecting only individual members, and that a class action is superior to other available methods fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## §1983 Legal Argument

Plaintiffs claims more generally. First, civilly committed persons must be afforded "more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish" Youngblood v. Romeo, 457 U.S. 307, 322, 102 S.Ct. 2452, 73 L. ed. 2d 28 (1982); see also: Sharp v. Weston, 233 F.3d 1166, 1172 (9th Cir. 2000). It follows logically, then, that the rights afforded prisoners set a floor for those that must be afforded to a civilly committed person and that where the Defendants violate a standard that is clearly established in the prison context, the violation is clearly established under the civilly committed persons scheme, except where the Washington civilly detained persons [RCW 71.09] statutory scheme would give a reasonable official reason to believe that the body of law applicable to prisoners would not apply. Second, where there is clearly established body of law that applies to all civilly committed persons, there is no reason that the law should not apply to the Plaintiffs in this case as well. The Ninth Circuit has previously held: The state cannot have it both ways. If confinement of a sexually violent predator is civil for the purposes of evaluation under the Ex Post Facto clause, that confinement is civil for the purpose of defining the rights to which the

detainee is entitled while confined. Civil status means civil status, with all the...rights that

accompany it. Jones v. Blanas, 393 F.3d 918, 933 (9th Cir. 2004)

The Defendant was deliberately indifferent to the risks that the drinking water posed to the

Plaintiffs, even if the risk might ultimately result in different future harm for different Plaintiffs.

That the 8th Amendment protects against future harm to prison inmates is not a novel

proposition. A remedy for unsafe conditions in a prison, in violation of the 8th Amendment, need

not await a tragic event. U.S.C.A. Const. Amend.8.

A person deprives another of a constitutional right, where that person, "does a affirmative act,

participates in another's affirmative act, or omits to perform an act which that person is legally

required to do that cause the deprivation of which complaint is made." Johnson v. Duffy, 588 F.

2d 740, 743 (9th Cir 1978). This is supported by the 9th Circuit's recent ruling on this very

subject.

Under the 8th Amendment, for purposes of showing deliberate indifference of prison officials to

policies and practices that expose inmates to a substantial risk of serious harm, "deliberate

indifference" occurs when an official acted or failed to act despite his knowledge of a substantial

risk of serious harm. U.S.C.A. Const. Amend.8.

Pre-trial detainees enjoy at least the same protection under the 14th as convicted inmates have

under the 8th amendment, and thus they have a clearly established right to safe drinking water.

U.S.C.A. Constitution Amends. 8 and 14.

The Due Process under 14th Amendment guarantees that a pretrial detainee will not be subjected

to conditions of detention that amount to punishment prior to an adjudication of guilt. U.S.C.A.

Const. Amend. 14.

1    Under the Due Process Clause of the 14th Amendment, a pretrial detainee's rights are at least as

2    great as the 8th protections available to a convicted prisoner; as such, the analysis for a deliberate

3    indifference claim under §1983 is the same under the 14th and 8th Amendments. U.S.C.A. Const.

4    Amend. 8th and 14th, 42 U.S.C.A.§ 1983

5
         To prevail on a claim under §1983 based on constitutionally inadequate conditions of
6
     confinement in violation of the right under the Due Process Clause of the 14th Amendment not to
7
     be subjected to punishment prior to an adjudication of guilt, a pretrial detainee must establish
8
     deliberate indifference. U.S.C.A. Const. Amend 14, 42 USCA § 1983
9
     To satisfy the requirements of deliberate indifference on a claim under §1983 for violation of the
10
     right under the Due Process Clause of the 14th Amendment not to be subject to punishment prior
11
     to an adjudication of guilt a pretrial detainee must allege that: (1) Objectively the deprivation the
12
     detainee suffered was sufficiently serious that he was denied minimal civilized measure of life's
13
     necessities, and (2) subjectively, the defendant official(s) acted with a sufficiently culpable state
14
     of mind, such as deliberate indifference to detainee health or safety U.S.C.A. Amend 14; 42
15
     U.S.C.A..§1983
16
     The 14th Amendment requires that civilly committed persons not be subjected to conditions that
17
     amount to punishment. U.S.C.A. Const. Amend 14. All Plaintiffs were at one time or another,
18
     pre-trial detainees but once civilly committed, none of the Plaintiffs gave up or lost their civil
19
     rights. Being exposed to unsafe drinking water is punishment, regardless of whether or not the
20
     Plaintiff is civilly committed. In either case, the Plaintiffs are protected under the 14th or 8th
21
     Amendments or both.
22

23

24

25

# SUPPORTING FACTORS

Statute of limitations does not apply as the over-riding issue is ongoing and the long-term detrimental affect to all current and former residents who consumed water while at SCC has yet to be determined, (see Attachment A). Factor supporting the claim are:

1. The question of contaminants in the water is further supported by the fact that all SCC Residential Staff and all Admin Staff does not drink the water at the facility that the residents rely on in order to sustain life. The SCC Staff bring their own water with them to work, or purchase their own beverages while at the facility, or use bottled water earmarked for resident consumption during times when the water turns brown.

2. Residents are officially allowed to purchase expensive water purification systems for personal use. The vast majority of the SCC residents cannot afford that expenditure.

3. White clothing turns into an off white or very light tan after several washings.

4. Numerous residents have complained of abdominal pain over the past several years and there have been several unexplained deaths or cancer related deaths since SCC opened and incidents of a high cancer rate among the population.

5. The SCC water filter system is in need of replacement but budgetary constraints are preventing proper repair or maintenance.

6. Water testing for quality control is conducted at specifically specified sites with better filtering systems but not in the living units where the majority of the water is consumed by SCC residents.

7. Bottled water is issued out to all residents when the water is discolored. This policy was enhanced and has increased in frequency since James Jones filed his complaint. However, residents often have to inform staff that the water is discolored or actually brown before

water bottles are issued. When the water begins to clear up, bottled water is abruptly cut off without testing to determine if the water is safe or if there are residual contaminants.

8. Washington State Department of Corrections and the Federal Bureau of Prisons abandoned the McNeil Island prison complex despite their desperate need for prison space. Water, water quality, and water access was a factor in prison closures on McNeil Island by state and federal governments.

9. Water consumed by the Plaintiffs comes from a reservoir that was used by the state and federal prison systems in the past. Then and now, wildlife, including geese, and other fowl and an abundance of fish defecate in this reservoir. The antiquated filtering system is hard pressed to adequately purify the water enough to convince the SCC Staff to drink it.

10. SCC records of bottled water purchases over the past several years and the records detailing distribution of bottled water to whomever have all but disappeared.

11. Pipes carrying water throughout McNeil Island and to SCC has exceeded their effective lifespan, and is fraught with crusted lining, cracks, and would not meet current EPA standards if installed, as they now exist.

12. No one has knowledge or documentation, or blue prints as to where all the pipes are, where they lead, or their current condition, and therefore cannot be maintained or repaired properly.

Each of these factors alone would not by themselves support the Plaintiff's claim. But it is the preponderance of all these factors combined gives rise to the real possibility that the Plaintiffs have a viable claim and that they are a class under Fed. R. Civ. P. 23.

## Relief Sought

The Plaintiffs, on behalf of themselves and all members of the named class, allege the following:

That the conditions of their confinement currently violate and have violated their constitutional rights.

Plaintiffs request declaratory and injunctive relief, as well as monetary damages against SCC, CEO Mark Strong in his Personal Capacity. U.S.C.A Const. Amend 42 U.S.C.A. §1983.

That Defendant Strong acted under the color of Washington State law when he engaged in the alleged unconstitutional conduct.

Plaintiffs seek declaratory and injunctive relief as well as damages against SCC, CEO. Mark Strong allowing the Plaintiffs to consume unsafe drinking water, which amounts to punishment. Named Plaintiffs are all detainees at the Special Commitment Center, and each declared that he or she was and is being exposed to contaminated water, like all other members of putative class, to substantial risk of future serious harm by the policies and practices allowed by Defendant Strong, even if named Plaintiffs might have in the past suffered varying injures or might currently have different health care needs. U.S.C.A. Const. Amend. 8 Fed. Rules Civ. Proc. Rule 23(a) (3), 28 U.S.C.A.

The Plaintiffs move that the court order the SCC facility to repair, or replace the water system, or otherwise improve the water quality so as to not require the need for excessive and harmful amounts of chemicals to transform the water to levels safe for human consumption, that the court assign an independent party to monitor water quality, that bottled water be made freely available to all residents until the SCC staff is willing to drink the water and it is declared safe and free from discoloration.

1

2                                    **Conclusion**

3

4
    The named Plaintiffs allege that during the course of their confinement at SCC, the Defendant
5
    SCC, CEO Mark Strong deprived the Plaintiffs of their constitutional rights under the 8th and 14th
6
    Amendments by knowingly allowing the Plaintiffs to consume water, that is at times was
7
    contaminated.
8
    The Defendant was aware that there were issues regarding the water at SCC and failed to do
9
    something about it. James Edward Jones v. Special Commitment Center; et al. No. 3:14-cv-
10
    05018 BHS. (Remanded to District Court on March 3, 2016.)
11
    The Defendant and SCC Staff are unwilling to consume the water at SCC but have no qualms
12
    allowing the Plaintiffs to do so. Water being one of the most essential elements to human life
13
    must be safe to drink for those involuntarily detained and who rely solely reliant on the State to
14
    provide for their basic necessities. To knowingly allow the Plaintiffs to consume contaminated,
15
    discolored water is Deliberate Indifference to the rights that the Constitution seeks to protect. If
16
    an Administrator is indifferent to health hazards, that Administrator demonstrates a deliberate
17
    indifference to the harm being done and to the constitutional principle at stake. This amounts to
18
    punishment in clear violation of the constitutional provisions as outlined by the 9th Circuit in
19
    abovementioned decision.
20
    The Plaintiffs respectfully ask the court to grant Class Certification, so as to effectively pursue
21
    Injunctive and Declaratory Relief as well as Compensatory Damages.
22

23

24

25

The undersigned Plaintiffs swear under penalty of perjury the foregoing statements made in the

above Class Action Complaint are true and correct to the best of our knowledge, and are sworn

to in accordance with 28 U.S.C. § 1746.


Respectfully submitted this 12th day of April 2016.


Calvin Malone
P.O. Box 88600
Steilacoom WA 98388

George Mitchell
P.O. Box 88600
Steilacoom WA 98388

Ronald Fox
P.O. Box 88600
Steilacoom WA 98388

Richard Schoonover
P.O. Box 88600
Steilacoom WA 98388

Mark Robinson
P.O. Box 88600
Steilacoom WA 98388

John E. Brooks
P.O. Box 88600
Steilacoom WA 98388

Chris Cantley
P.O. Box 88600
Steilacoom WA 98388

Jonathan Parsons
P.O. Box 88600
Steilacoom WA 98388

Joseph Townsend
P.O. Box 88600
Steilacoom WA 98388

Paul Geirer
P.O. Box 88600
Steilacoom WA 98388

Scott Jones
P.O. Box 88600
Steilacoom WA 98388

Tommy Coleman
P.O. Box 88600
Steilacoom WA 98388

1

George Hancock
P.O. Box 88600
2
Steilacoom WA 98388
3

4
Zachery Nelson
P.O. Box 88600
5
Steilacoom WA 98388

6

7
Bruce Rafford
P.O. Box 88600
8
Steilacoom WA 98388

9

Michael Cole
10
P.O. Box 88600
Steilacoom WA 98388
11

12
Jeremy Mathis
13
P.O. Box 88600
Steilacoom WA 98388
14

15
Gregory Jaeger
P.O. Box 88600
16
Steilacoom WA 98388

17

18
James Turner
19
P.O. Box 88600
Steilacoom WA 98388
20

Duane Brennan
P.O. Box 88600
Steilacoom WA 98388

Matthew Hopkins
Matthew Hopkins
P.O. Box 88600
Steilacoom WA 98388

Dennis Dumas
P.O. Box 88600
Steilacoom WA 98388

Curtis Pouncy
P.O. Box 88600
Steilacoom WA 98388

Richard Jackson
Richard Jackson
P.O. Box 88600
Steilacoom WA 98388

Laurence Williams     AKA
P.O. Box 88600         mikael Azeem
Steilacoom WA 98388

Thomas W- Toomey
Thomas Toomey
P.O. Box 88600
Steilacoom WA 98388

21
Lara McCollum
P.O. BOX 88600
22
STEiLACOOM WA98388

23

24

25

-13-

# ATTACHMENT



**STATE OF WASHINGTON**

# Department of Social and Health Services
*PO Box 88450*
*Steilacoom, WA. 98388-0646*

January 30, 2015

**TO:**   Staff and Residents on McNeil Island

**FROM:**   Crystal McCabe, Safety & Risk Manager

**Subject:**   Notice to Water System Users – DBP MCL Violation

For years the McNeil Island Water System has provided dependable, high-quality potable water to water system users on McNeil Island without incident; great pride is taken in this fact. As is common practice, disinfectants are added to the water system to protect the quality of drinking water as it travels through the distribution system. Disinfectants can react with naturally-occurring materials in the water to form byproducts, called Disinfection Byproducts (DBP), which may pose health risks after long term exposure. Recently, through routine testing, DBP levels of Trihalomethanes, were found to be higher than current Maximum Contaminant Levels (MCL) set by the Environmental Protection Agency (EPA). This is not an immediate health risk. Per the Department of Public Health, there is not a need to use an alternate (e.g. bottled) water supply. However, it is the consumer's right to know Trihalomethanes may, when consumed in excess of the MCL over many years, result in liver, kidney, or central nervous system problems and an increased risk of cancer.

The McNeil Island Water System conducts regular and frequent water quality tests. Tests are conducted both in-house by McNeil Island Water System operators as well as by an independently certified laboratory. The DBP MCL violation resulted from one set of samples recently pulled from the system. Samples taken before and after this particular set of samples were negative and are in compliance with federal and state requirements. The McNeil Island Water System will continue to be monitored and corrective actions will be taken, if necessary, to resolve the elevated DBP levels.



1/3